UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLYN GREGORY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:04CV01682 ERW |
| | ) | |
| TENANT HEALTHSYSTEMS DI, INC. | ) | |
| d/b/a DES PERES HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court upon Defendant's Motion to Dismiss or Stay and Refer

Claims to Binding Arbitration [doc. #5].

**I.     BACKGROUND FACTS**

Plaintiff Carolyn Gregory ("Plaintiff") was employed at Des Peres Hospital as a radiology

technologist. Des Peres Hospital is a 167-bed community hospital located in St. Louis, Missouri, and

is owned by Defendant Tenant HealthSystems DI, Inc. ("Defendant"), a subsidiary of Tenant

Healthcare Corporation. Plaintiff brings one count against Defendant, alleging age discrimination and

retaliation, in violation of the Age Discrimination in Employment Act. Plaintiff was employed by Des

Peres Hospital from April 1979 until October 6, 2003.[1] She alleges that, prior to October 2003, she

had been subjected to less favorable treatment due to her age and that she had complained of this

discriminatory treatment. Compl. ¶ 5. She further alleges that, on October 6, 2003, she was told by

---

[1]One portion of Plaintiff's Complaint states that she was terminated on October 6, 2004.
However, the Complaint also states that Plaintiff was employed until October 6, 2003. It appears
that the 2004 date is a typographical error.

her supervisor that her employment was terminated and that the reason given for her termination "was false." *Id.* ¶ 6. Upon receiving notice of the termination, Plaintiff appealed the termination through Defendant's appeal process and "received a board hearing," but "[D]efendant failed to follow the determination of its own board." *Id.* ¶ 7. Plaintiff alleges that she has been harmed as a result of Defendant's action. *Id.* ¶ 8.

## II.    DISCUSSION

In its Motion, Defendant requests that the Court dismiss or stay this matter and refer Plaintiff's claim to final and binding arbitration. According to Defendant, Plaintiff agreed to utilize Defendant's Fair Treatment Process ("FTP") as the exclusive means of resolving legal claims arising out of her employment and termination of employment, and the final step of the FTP is binding arbitration. Defendant contends that Plaintiff (1) signed an acknowledgment form acknowledging her agreement to the arbitration requirement, (2) continued her employment after receiving a copy of the FTP, and (3) actually utilized the FTP through the first four steps, but then declined to arbitrate. Defendant argues that the agreement is enforceable and that Plaintiff should be compelled to arbitrate her claim. In opposing the Motion, Plaintiff denies that she ever entered into an agreement to utilize final and binding arbitration for disputes arising from her employment.

"[A]n agreement to arbitrate is a matter of contract, and 'is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration.'" *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986) (internal quotation omitted); *see also*

*id.* at 649 (any question regarding whether the parties have agreed to arbitrate is question for court). In determining whether it should compel arbitration, a court's role is limited to determining "whether the parties have entered into a valid agreement to arbitrate and, if so, whether the existing dispute falls under the coverage of the agreement." *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 680 (8th Cir. 2001); *see also Keymer v. Mgmt. Recruiters Intern., Inc.*, 169 F.3d 501, 504 (8th Cir. 1999). When deciding whether parties have agreed to arbitrate a particular matter, courts apply ordinary state law contract principles. *Keymer*, 169 F.3d at 504. The Federal Arbitration Act's pro-arbitration policy "does not operate without regard to the intent of the contracting parties, for arbitration is a matter of consent, not of coercion." *Id.*

The issue before the Court concerns whether the parties have entered into a valid agreement to arbitrate Plaintiff's age discrimination claim. Under Missouri law, a contract requires mutuality of agreement, which means that the parties must have "a meeting of the minds on the essential terms of a contract." *Ketcherside v. McLane*, 118 S.W.3d 631, 635 (Mo. Ct. App. 2003). Mere negotiations or preliminary steps cannot satisfy this requirement. *Id.* To determine whether there has been a meeting of the minds, courts look to "the intention of the parties as expressed or manifested in their words or acts." *Smith v. Hammons*, 63 S.W.3d 320, 325 (Mo. Ct. App. 2002). In other words, "[w]hether a contract is made and, if so, what the terms of that contract are, depend upon what is actually said and done and not upon the understanding or supposition of one of the parties." *Id.*

In support of its contention that an agreement to arbitrate exists, Defendant has offered the affidavit of Sabrina Bell, who served as Director of Radiology in 2001. Ms. Bell states that she was personally responsible for ensuring that employees in her department received the 2001 Employee

3

Handbook (which contains the arbitration provision). Bell Aff. ¶ 2. According to Ms. Bell, each employee was given a Handbook and instructed to read the book and sign the detachable Employee Acknowledgment Form. *Id.* Ms. Bell states that she collected the Employee Acknowledgment Forms, including Plaintiff's form, and sent them to the Human Resources Department, checking off each name on a department roster to ensure she collected and transmitted all of the forms. *Id.* According to Ronald Birlew, Director of Human Resources at Des Peres Hospital, Plaintiff' Human Resources file, including her Employee Acknowledgment Form, have been missing since before the time Plaintiff's grievance was heard by Defendant's Committee in March 2004. Birlew Aff. ¶ 3. Through Mr. Birlew, Defendant also offers the contents of Plaintiff's grievance file, which contains various communications between Plaintiff and Defendant concerning the review of the decision to terminate her employment.

In her own affidavit, Plaintiff states that she never received an Employee Handbook in 2001 and that she never signed an Employee Acknowledgment Form. Gregory Aff. ¶ 4. According to Plaintiff, when she received notice that her employment was terminated, there was a male manager present in the office who explained that he was present as a witness to the process and told Plaintiff that she could take steps "to appeal," giving her the telephone number for a Human Resources representative. *Id.* at ¶ 5. Plaintiff claims that, during an office visit with the Human Resources representative, the representative did not mention or allude to arbitration or the Employee Handbook. *Id.* ¶ 6. Plaintiff states that she first saw the Employee Handbook after her termination. *Id.* ¶ 7-8.

For purposes of this Motion, the Court accepts as true Plaintiff's Complaint and views the facts in the light most favorable to her. Thus, the Court finds that Defendant has failed to demonstrate that Plaintiff ever received the Employee Handbook containing the arbitration provision.

Defendant has also failed to demonstrate that Plaintiff ever signed an Employee Acknowledgment Form to acknowledge her agreement to the arbitration provision. Further, contrary to Defendant's arguments, no contract can be implied from the parties' actions. Defendant states that Plaintiff invoked the FTP and pursued the first four steps. Defendant argues that, by this action, Plaintiff objectively manifested her assent to an express offer by Defendant to afford Plaintiff the FTP process, including the arbitration requirement. According to Defendant, an agreement to arbitrate was formed. This argument is unpersuasive. At most, Plaintiff's actions demonstrate her desire to have Defendant reconsider its decision to terminate her employment. The written communications contained in the grievance file to which Defendant points fall far short of demonstrating a meeting of the minds between the parties concerning an agreement to arbitrate.[2] Because no agreement to arbitrate exists, Defendant's Motion must be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant s Motion to Dismiss [doc. #5] is **DENIED**.

Dated this <u>11th</u> day of May, 2005.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

---

[2]Some of the written communications to which Defendant points contain the words "Fair Treatment Process" or "Fair Process" or "FTP." These communications appear to be routine letters between the parties concerning the appeals process. The communications cannot be said to evidence an objective intent to arbitrate. Moreover, the cases to which Defendant cites in support of its argument are distinguishable. *See, e.g., May v. Higbee Co.*, 372 F.3d 757 (5th Cir. 2004) (employee admitted that she received handbook and signed form); *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437 (9th Cir. 1994) (employee admitted that he received handbook and had written a letter stating he wanted to arbitrate).